UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **Serafín García Armas** and **Karina García Gruber,**<br><br>*plaintiffs,*<br><br>*-against-*<br><br>**Bolivarian Republic of Venezuela** and **Petróleos de Venezuela, S.A.**<br><br>*defendant.* | **Civil Action No:** |

ACTION TO RECOGNIZE FOREIGN JUDGMENT

PROVENZANO GRANNE & BADER LLP
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
+1 212 653 0388

### ACTION TO RECOGNIZE FOREIGN JUDGMENT

Plaintiffs Serafín García Armas and Karina García Gruber (together, the "**Judgment Creditors**") bring this action seeking to recognize a judgment rendered by a French court against defendant the Bolivarian Republic of Venezuela ("**Venezuela**") and permit its enforcement against Venezuela and its *alter ego* Petróleos de Venezuela, S.A. ("**PDVSA**").

### Nature of the Case

1.   The Judgment Creditors are Spanish citizens whose property was expropriated by Venezuela.

2.   The expropriation of the Judgment Creditors' property was recognized in a final award (the "**Award**") rendered on April 26, 2019, in an arbitral proceeding between the Judgment Creditors and Venezuela pursuant to a bilateral investment treaty between Spain and Venezuela: the Agreement between the Kingdom of Spain and the Republic of Venezuela for the Promotion and Reciprocal Protection of Investments, signed at Caracas on November 2, 1995, and in force since September 10, 1997 (the "**Treaty**"). The arbitration was conducted in Paris, France.

3.   A true copy of the Award together with a certified translation is attached to the Declaration of Ms. Shaparak Saleh dated October 8, 2024, ("**Saleh Declaration**") as **Exhibit A**. All references herein are to the English translation.

2

4.    During the arbitral proceedings Venezuela sought recourse of various kinds in the French courts. These proceedings are detailed in the Award and need not be recounted here. Ultimately, it took more than six years for the Tribunal to render a final award.

5.    Then, after the Award was rendered, Venezuela sought to have it annulled at the seat of arbitration, Paris, France.

6.    The Paris Court of Appeal annulled only one portion of the Award, recognizing all other portions of the Award, and issued an *exequatur* permitting enforcement on October 24, 2023 (the "**French Judgment**"). A true copy of the French Judgment together with a certified translation is attached to the Saleh Declaration as **Exhibit C**. All references herein are to the English translation.

7.    The Judgment Creditors now seek to have the French Judgment domesticated so that they may enforce their rights here.

### Jurisdiction & Venue are Proper in this District

8.    The Court has subject matter jurisdiction over this action because the French Judgment is based on an agreement "for the benefit of a private party to submit to arbitration all or any differences which have arisen … or to confirm an award made pursuant to such an agreement to arbitrate" where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6)(B). The applicable

"treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards" is the New York Convention.

9.   The Foreign Sovereign Immunities Act ("**FSIA**") gives the courts of the United States jurisdiction where a foreign judgment is based on a foreign arbitral award. *See, e.g., Commissions Imp. Exp. S.A. v. Republic of the Congo,* 757 F.3d 321 (D.C. Cir. 2014) (enforcing English judgment based on foreign arbitral award under Uniform Foreign Country Money–Judgments Recognition Act); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 165 (3d Cir. 2023), cert. denied, 144 S. Ct. 549, 217 L. Ed. 2d 292 (2024).

10.  This Court also has subject matter jurisdiction over both defendants pursuant to 28 U.S.C. 1330, as Venezuela is a foreign state, and PDVSA has already been determined to be its *alter ego. See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019).

11.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

### The French Judgment is Conclusive

12.  Following Venezuela's expropriation of the Judgment Creditors' property, the Judgment Creditors commenced arbitration against Venezuela in 2012 pursuant to the Treaty. *See* Saleh Decl. ¶ 5. In the Treaty, Venezuela consented to arbitrate such claims before an *ad hoc* tribunal constituted pursuant to the Arbitration Rules of the United Nations Commission on International Trade

Law. Venezuela therefore waived any claims to immunity with respect to this matter.

13. An arbitral tribunal (the "**Tribunal**") was duly convened. The arbitration was administered by the Permanent Court of Arbitration. The language of the arbitration was Spanish, and the juridical seat of the Tribunal was Paris, France. *See* Saleh Decl. ¶ 4.

14. Courts of the United States routinely conclude that bilateral investment treaties, including ones with Venezuela specifically, are valid and result in enforceable awards and judgments. *See, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 2 (D.C. Cir. 2019); *Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112 (D.D.C. 2015). *See also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019).

15. Venezuela fully participated in the arbitration in all respects, and had ample opportunity to—and indeed did—raise any substantive and procedural defenses it had, both before the Tribunal and in the French courts. These facts are accurately reflected in the Award. It ultimately took more than six years for the Tribunal to reach a final Award. *See* Saleh Decl. ¶ 5, Ex. A ¶¶ 10 – 149,

16. The Tribunal found Venezuela in breach of the Treaty and awarded the Judgment Creditors relief amounting to several hundred million U.S. dollars in damages, interest and costs. *See* Saleh Decl. Ex. A ¶ 571(b)-(d). The amounts

awarded relate to several different claims and the Award breaks them out separately:

    a. Judgment Creditor Serafín García Armas was awarded US$ 99,677,396.88 in damages, plus US$ 66,696,006.60 in pre-Award interest, in respect of the expropriation of shares in a Venezuelan company. *See* Saleh Decl. Ex. A ¶ 571(b), (d)(i).

    b. Judgment Creditor Karina García Gruber was awarded US$ 38,896,584.20 in damages, plus US$ 26,026,430.44 in pre-Award interest, in respect of the expropriation of shares in two Venezuelan companies. *See* Saleh Decl. Ex. A ¶ 571(b), (d)(ii).

    c. In addition, the Award awarded Judgment Creditor Serafín García Armas US$ 75,677,393.94 in damages, plus US$ 50,637.156.71 in pre-Award interest, in respect of certain guarantees provided to merchandise suppliers. *See* Saleh Decl. Ex. A ¶ 571(c), (d)(i).

17. The Award further granted the Judgment Creditors, jointly, costs and fees in connection with the arbitration totaling US$ 7,267,953.06 and € 2,318,004.85. *See* Saleh Decl. Ex. A ¶ 571(e), (f).

18. For the calculation of post-Award interest on all these amounts, the Tribunal set an interest rate of LIBOR for 12 months plus 4.5% capitalized annually beginning thirty days from the date of the Award. In the event LIBOR were to be abandoned as a reference rate (as it began to be in 2021) the Tribunal

ordered that "the rate reported by the Federal Reserve Bank of New York to replace it shall be adopted for the period following that fact." Saleh Decl. Ex. A ¶ 572.

19.   After the Final Award was delivered to the parties, Venezuela tried to have it set aside in the French courts. Those proceedings took several more years. *See* Saleh Decl. ¶ 10.

20.   On October 24, 2023, the Paris Court of Appeal entered the French Judgment. The French Judgment confirmed the Award in almost all respects. *See* Saleh Decl. ¶ 10, Ex. C.

21.   The French Judgment annulled only one portion of the Award, which awarded Judgment Creditor Serafín García Armas US$ 75,677,393.94 in damages, plus US$ 50,637,156.71 in interest. *See* Saleh Decl. Ex. C at 32 − 33. It rejected all other grounds asserted by Venezuela for annulment or modification of the Award.

22.   The French Judgment also specifically noted that, pursuant to Article 1527, Paragraph 2 of the French Code of Civil Procedure, the Court's ruling made the Award enforceable as to all parts not specifically set aside. *See* Saleh Decl. Ex. C at 33.

23.   French Judgment is therefore now fully enforceable against Venezuela (and PDVSA) as to the following:

    a.  In favor of Judgment Creditor Serafín García Armas, US$ 166,373,403.48, plus applicable post-Award interest;

    b.  In favor of Judgment Creditor Karina García Gruber, US$ 64,923,014.64, plus applicable post-Award interest;

    c.  In favor of the Judgment Creditors, jointly, US$ 7,267,953.06, plus € 2,318,004.85, plus applicable post-Award interest.

24.    As to the calculation of post-Award interest, LIBOR was in fact replaced by an alternative interest rate. The Federal Reserve Bank of New York adopted the Secured Overnight Finance Rate, or SOFR, as a replacement benchmark. Saleh Decl. Ex. B.

25.    For purposes of computation of interest, thirty days from the date of the Award was May 26, 2019.

26.    Judgment Creditor Serafín García Armas is therefore entitled to judgment in the amount of US$ 166,373,403.48, plus

    a.  post-Award interest at LIBOR for 12 months plus 4.5% *per annum* capitalized annually from May 26, 2019, until June 30, 2023, plus

    b.  post-Award interest at SOFR plus 4.5% *per annum* capitalized annually from July 1, 2023, until entry of Judgment by this Court, plus

    c.  post-judgment interest at the rate provided by 28 U.S.C. § 1961.

27.    Judgment Creditor Karina García Gruber is therefore entitled to judgment in the amount of US$ 64,923,014.64 plus

  a. post-Award interest at LIBOR for 12 months plus 4.5% *per annum* capitalized annually from May 26, 2019, until June 30, 2023, plus

  b. post-Award interest at SOFR plus 4.5% *per annum* capitalized annually from July 1, 2023, until entry of Judgment by this Court, plus

  c. post-judgment interest at the rate provided by 28 U.S.C. § 1961.

28. The Judgment Creditors are jointly entitled to judgment in the amount of US$ 7,267,953.06 and € 2,318,004.85 plus post-Award interest. Because the U.S. dollar LIBOR rate ceased publication on June 30, 2023, different interest rates apply thereafter.

29. With respect to the U.S. dollar-denominated award, the Judgment Creditors are entitled to judgment in the amount of US$ 7,267,953.06 plus

  a. post-Award interest at LIBOR for 12 months plus 4.5% *per annum* capitalized annually from May 26, 2019, until June 30, 2023, plus

  b. post-Award interest at SOFR plus 4.5% *per annum* capitalized annually from July 1, 2023, until entry of Judgment by this Court, plus

  c. post-judgment interest at the rate provided by 28 U.S.C. § 1961.

30. With respect to the Euro-denominated award, the Judgment Creditors are entitled to judgment in the amount of € 2,318,004.85 plus post-Award interest. Converted to U.S. dollars at the dollar to Euro rate of 1.154 applicable on the date of the Award, April 26, 2019 (as reported by the Federal Reserve Bank of St. Louis, available at https://fred.stlouisfed.org/series/DEXUSEU), this

constitutes an award of US\$ 2,674,977.60. As the sums are converted to U.S. dollars, the U.S. dollar LIBOR rate has been applied. Using the applicable rate, the Judgment Creditors are jointly entitled to judgment in the amount of US\$ 2,674,977.60 plus

    a. post-Award interest at U.S. dollar LIBOR for 12 months plus 4.5% *per annum* capitalized annually from May 26, 2019, until June 30, 2023, plus

    b. post-Award interest at SOFR plus 4.5% *per annum* capitalized annually from July 1, 2023, until entry of Judgment by this Court, plus

    c. post-judgment interest at the rate provided by 28 U.S.C. § 1961.

31.   A table showing the computation of interest through September 30, 2024, is annexed hereto. The total amounts of the judgments to which the Judgment Creditors are entitled as of September 30, 2024, are:

    a. Serafín García Armas: US\$ 242,417,598.33, comprised of US\$ 99,677,396.88 principal, US\$ 66,696,006.60 (pre-Award interest), and US\$ 76,044,194.85 as post-Award interest.

    b. Karina García Gruber: US\$ 94,597,339.22, comprised of US\$ 38,896,584.20 principal, US\$ 26,026,430.44 (pre-Award interest), and US\$ 29,674,324.58 as post-Award interest.

    c. Serafín García Armas and Karina García Gruber, jointly: US\$ 14,487,540.20, comprised of US\$ 9,942,930.66 principal, and US\$ 4,544,609.54 as post-Award interest.

### The French Judgment Should be Enforced Here

32. The location of the arbitral seat—in this case, France—provides the primary law applicable to review of an award made under the New York Convention. *See BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 37 (2014). The circumstances of the French litigation, described at length in the French Judgment, demonstrate that it was rendered by a court of competent jurisdiction, which conducted its proceedings in a manner that allowed Venezuela to fairly defend itself on the merits. *See* Saleh Declaration ¶¶ 2, 3 & 11 − 16, Ex. A. French law in fact permits a much more thorough, *de novo* review of jurisdictional determinations, including all legal and factual findings even when based on new evidence, rendered by an arbitral tribunal than does U.S. law. *See* Saleh Declaration ¶ 5. Venezuela therefore received considerably more favorable treatment from the French courts with respect to the Award than it would have been accorded in the United States.

33. The issuance of the *exequatur* permits the Judgment Creditors to enforce their rights under the Award as recognized in (or limited by) the French Judgment. *See* Saleh Declaration ¶¶ 12, 13. Courts in this district and elsewhere therefore treat foreign judgments granting *exequatur* to arbitral awards as judgments subject to recognition and enforcement. *See A.D. Trade Belgium S.P.R.L. v.*

*Republic of Guinea*, 2023 WL 2733773 (D.D.C. 2023) (recognizing French exequatur pursuant to the D.C. Uniform Foreign-Country Money Judgments Recognition Act of 2011. *See also Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79 (2d Cir. 1994) (treating French *exequatur* as equivalent to judgment and applying the New York Uniform Foreign-Country Money Judgments Recognition Act).

34.   Under the D.C. Uniform Foreign-Country Money Judgments Recognition Act of 2011 (**the "Recognition Act"**), "'a court of the District of Columbia shall recognize [the] foreign-country judgment,' unless the party resisting recognition shows an exception applies." *A.D. Trade Belgium,* 2023 WL 2733773, at *3. As that case explains, the Recognition Act "applies to any foreign-country judgment that grants or denies money; is final, conclusive, and enforceable; and is not a judgment regarding taxes, fines or other penalties, or a domestic matter." *Id.*, citing D.C. Code § 15-363(a)–(b).

35.   As the Saleh Declaration explains, as a matter of French law the *exequatur* granted by the French Judgment constitutes a confirmation of the Award as to all aspects it did not modify and, thus, made all portions of the Award, other than those specifically annulled by the Court, enforceable. *See* Saleh Declaration ¶¶ 12, 13. No exceptions in the Recognition Act apply in this case.

36.   Some district courts have held that in cases arising under federal law, "recognition of … foreign judgments in federal court may be based on the

doctrine of comity." *Pony Express Recs., Inc. v. Springsteen*, 163 F. Supp. 2d 465, 472 (D.N.J. 2001). This is contrary to the decision of the D.C. Circuit in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, which applied the Recognition Act to a judgment based on an international arbitral award subject to the New York Convention.

37.    Even if the federal common law regarding comity applied to the foreign judgment at issue here, the same strong presumption in favor of recognition would apply: "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). The presumption is even stronger when (as here) the judgment is one confirming an arbitral award rendered at the juridical seat of the arbitration. *See, e.g.*, *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2020) ("'[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'") quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984).

38.    Judgments rendered by French courts are routinely enforced here by U.S. federal courts. *See, e.g.*, *Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016 (9th Cir. 2019) (enforcing French judgment based on arbitral award finding *quasi in rem* jurisdiction proper); *Société d'Aménagement et de Gestion de l'Abri Nautique v. Marine Travelift Inc.*, 324 F. Supp. 3d 1004 (E.D. Wis. 2018) (recognizing French judgment, including award of attorney's fees); *Int'l*

*Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001) (holding that according comity to a French decision was not abuse of discretion); *Kenner Prod. Co., a Div. of CPG Prod. Corp. v. Société Foncière et Financière Agache-Willot*, 532 F. Supp. 478 (S.D.N.Y. 1982).

39.   Whether under the Recognition Act or the doctrine of comity under federal common law, the French Judgment is entitled to recognition in this District.

### The French Judgment May Also Be Enforced Against PDVSA

40.   Finally, as a result of the extended and voluminous proceedings related to *Crystallex*, PDVSA is precluded from challenging the fact that it is an *alter ego* of Venezuela, or that its property in this District is subject to execution.

41.   The Third Circuit has adjudicated PDVSA to be an *alter ego* of Venezuela and confirmed that it has property subject to execution in the United States. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 152 (3d Cir. 2019), *aff'g Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 395 (D. Del. 2018); *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 82 (3d Cir. 2018).

42.   Issue preclusion operates to prevent PDVSA (or Venezuela) from raising this issue again. *See, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803 (D. Del. Jan. 14, 2021); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179 (D. Del. 2023), dismissed sub nom.

*Contrarian Cap. Mgmt. LLC v. Bolivarian Republic of Venezuela*, 2024 WL 2830502 (3d Cir. 2024).

43. The Court should therefore enter judgment against PDVSA jointly and severally with judgment against Venezuela.

## DEMAND FOR RELIEF

44. For the foregoing reasons, the Court should enter judgment:

   a. In favor of Judgment Creditor Serafín García Armas in the amount of US$ 242,417,598.33, plus post-Award interest at the Award rate until the date judgment is entered, plus post-judgment interest at the rate provided by 28 U.S.C. § 1961.

   b. In favor of Judgment Creditor Karina García Gruber in the amount of US$ 94,597,339.22, plus post-Award interest at the Award rate until the date judgment is entered, plus post-judgment interest at the rate provided by 28 U.S.C. § 1961.

    c. In favor of the Judgment Creditors jointly in the amount of US$ 14,487,540.20, plus post-Award interest at the Award rate until the date judgment is entered, plus post-judgment interest at the rate provided by 28 U.S.C. § 1961.

Dated: October 10, 2024
New York County, New York

_____

S. Christopher Provenzano

PROVENZANO GRANNE & BADER LLP
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
Telephone: (212) 653-0388
chris.provenzano@pgbfirm.com

*attorneys for Serafín García Armas and Karina García Gruber*

16

ANNEX

**Table Showing Computation of Award Amount**
**As of September 30, 2024**

| Compensation | | | | |
|---|---|---|---|---|
| **Judgment Creditor** | **Initial Amount** | **Pre award interest** | **Post award interest** | **Total** |
| **Serafín García Armas** | US$ 99,677,396.88 | US$ 66,696,006.60 | US$ 76,044,194.85 | US$ 242,417,598.33 |
| **Karina García Gruber** | US$ 38,896,584.20 | US$ 26,026,430.44 | US$ 29,674,324.58 | US$ 94,597,339.22 |
| **Judgment Creditors Jointly** | US$ 9,942,930.66 | N/A | US$ 4,544,609 | US$ 14,487,540.66 |
| **Total** | **US$ 148,516,911.74** | **US$ 92,722,437.04** | **US$ 110,263,128.97** | **US$ 351,502,477.75** |

| Compensation for Serafín García Armas | | | | | |
|---|---|---|---|---|---|
| Initial amount (including pre award interest) | Annualized rate (LIBOR/SOFR +4,5%) | Start of the annual period | End of the annual period | Annual accrued interest | Principal + interests |
| $ 166,373,403.48 | 6.27% | 5/26/2019 | 5/25/2020 | $ 10,430,630.08 | $ 176,804,033.56 |
| | 4.87% | 5/26/2020 | 5/25/2021 | $ 8,569,388.33 | $ 185,373,421.89 |
| | 5.36% | 5/26/2021 | 5/25/2022 | $ 9,899,737.82 | $ 195,273,159.71 |
| | 9.35% | 5/26/2022 | 5/25/2023 | $ 18,211,157.43 | $ 213,484,317.14 |
| | 9.82% | 5/26/2023 | 5/25/2024 | $ 20,968,279.57 | $ 234,452,596.71 |
| | 9.79% | 5/26/2024 | 9/30/2024 | $ 7,965,001.62 | $ 242,417,598.33 |
| Total | | | | $ 76,044,194.85 | |

| Compensation for Karina García Gruber | | | | | |
|---|---|---|---|---|---|
| Initial amount (including pre award interest) | Annualized rate (LIBOR/SOFR +4,5%) | Start of the annual period | End of the annual period | Annual accrued interest | Principal + interests |
| $ 64,923,014.64 | 6.27% | 5/26/2019 | 5/25/2020 | $ 4,070,289.69 | $ 68,993,304.33 |
| | 4.87% | 5/26/2020 | 5/25/2021 | $ 3,343,987.15 | $ 72,337,291.49 |
| | 5.36% | 5/26/2021 | 5/25/2022 | $ 3,863,122.41 | $ 76,200,413.90 |
| | 9.35% | 5/26/2022 | 5/25/2023 | $ 7,106,443.79 | $ 83,306,857.69 |
| | 9.82% | 5/26/2023 | 5/25/2024 | $ 8,182,341.01 | $ 91,489,198.69 |
| | 9.79% | 5/26/2024 | 9/30/2024 | $ 3,108,140.52 | $ 94,597,339.22 |
| Total | | | | $ 29,674,324.58 | |

| Compensation for both plaintiffs in USD | | | | | |
|---|---|---|---|---|---|
| Initial amount | Annualized rate (LIBOR/SOFR +4,5%) | Start of the annual period | End of the annual period | Annual accrued interest | Principal + interests |
| $ 7,267,953.06 | 6.27% | 5/26/2019 | 5/25/2020 | $ 455,657.74 | $ 7,723,610.80 |
| | 4.87% | 5/26/2020 | 5/25/2021 | $ 374,350.17 | $ 8,097,960.98 |
| | 5.36% | 5/26/2021 | 5/25/2022 | $ 432,465.94 | $ 8,530,426.91 |
| | 9.35% | 5/26/2022 | 5/25/2023 | $ 795,546.85 | $ 9,325,973.76 |
| | 9.82% | 5/26/2023 | 5/25/2024 | $ 915,990.59 | $ 10,241,964.35 |
| | 9.79% | 5/26/2024 | 9/30/2024 | $ 347,947.79 | $ 10,589,912.14 |
| Total | | | | $ 3,321,959.08 | |

| Compensation for both plaintiffs in EUR (Converted to U.S. dollars at the dollar to Euro rate of 1.154 applicable on the date of the Award, April 26, 2019) | | | | | |
|---|---|---|---|---|---|
| Initial amount | Annualized rate (LIBOR/SOFR +4,5%) | Start of the annual period | End of the annual period | Annual accrued interest | Principal + interests |
| $ 2,674,977.60 | 6.27% | 5/26/2019 | 5/25/2020 | $ 167,705.30 | $ 2,842,682.90 |
| | 4.87% | 5/26/2020 | 5/25/2021 | $ 137,779.97 | $ 2,980,462.87 |
| | 5.36% | 5/26/2021 | 5/25/2022 | $ 159,169.53 | $ 3,139,632.40 |
| | 9.35% | 5/26/2022 | 5/25/2023 | $ 292,801.84 | $ 3,432,434.24 |
| | 9.82% | 5/26/2023 | 5/25/2024 | $ 337,131.28 | $ 3,769,565.52 |
| | 9.79% | 5/26/2024 | 9/30/2024 | $ 128,062.54 | $ 3,897,628.06 |
| Total | | | | $ 1,222,650.46 | |